IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:08-CV-36-FL

| | |
|---|---|
| SUSAN K. HARE, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), (DE ## 16 & 24), and plaintiff's timely objection to the memorandum and recommendations ("M&R") entered by the United States Magistrate Judge. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court overrules plaintiff's objections to the M&R and, except as stated below, adopts the findings in the M&R upholding the Commissioner's decision denying benefits.

## STATEMENT OF THE CASE

Plaintiff applied for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income payments ("SSI") on September 10, 2003, alleging disability beginning June 26, 2003. (R. 79-81.) Her application was denied initially and upon reconsideration. (R. 43-51.) Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on January 24, 2005. (R. 55, 355-98.) In order dated December 28, 2005, the ALJ determined that plaintiff was not disabled. (R. 18-39.) The ALJ received the testimony of a vocational expert

("VE") during this hearing, at which plaintiff was represented by counsel. (R. 355, 385-97.) The Appeals Council denied plaintiff's request for review, making the ALJ's determination defendant's final decision. (R. 6-8.) Plaintiff then initiated this action by complaint filed March 24, 2008, seeking judicial review of defendant's denial of her claim.

## DISCUSSION

### A. Standard of Review

This court's role in reviewing the final decision of the Commissioner is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). It must be "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id.

In addressing a plaintiff's objection to an M&R, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.; see Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

### B. Analysis

Plaintiff lodges numerous objections to the magistrate judge's findings. Specifically, plaintiff argues that the magistrate judge erred: (1) by concluding that the ALJ properly evaluated the opinions of Dr. Paul Buongiorno's and Dr. Charles W. Lapp; (2) by concluding that the ALJ was not

2

required to state the weight he assigned to the opinions of Dr. Len Lecci and Dr. John C. Liguori; (3) by declining to review the ALJ's assessment of plaintiff's credibility; (4) by finding that the ALJ's use of the phrase "low stress" in his hypothetical question to the VE was appropriate; and (5) by finding that the VE's testimony was sufficient to carry defendant's burden of proof at step five of the sequential evaluation. The court now addresses each of these objections in turn.

Plaintiff's first objection is unpersuasive. Plaintiff contends that the magistrate judge incorrectly endorsed the ALJ's allegedly erroneous decision to accord the opinions of Dr. Buongiorno and Dr. Lapp "no weight." Where a treating physician's opinion is consistent with other substantial evidence and is supported by medically acceptable clinical and laboratory diagnostic techniques, it will be given controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, where a treating physician's opinion is inconsistent with other substantial evidence, it may be accorded significantly less weight. See Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); see also Underwood v. Astrue, 2008 U.S. Dist. LEXIS 80347 (W.D. Va. Oct. 10, 2008) (citing Craig and noting that 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), now require controlling weight be given to treating physicians opinions when those opinions are consistent with substantial evidence in the case). Further, "[a]n ALJ's assessment of a physician's opinion (whether treating or consulting) will generally not be disturbed 'absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.'" Munson v. Astrue, 2008 U.S. Dist. LEXIS 100273, 5-6 (E.D.N.C. Dec. 8, 2008) (quoting Koonce v. Apfel, No. 98-1144, 1999 U.S. App. LEXIS 307, 1999 WL 7864, at *2 (4th Cir. Jan. 11, 1999) (per curiam)).

Dr. Buongiorno appears to have begun treating plaintiff around August 12, 2004, after she

3

was referred by an employee of her attorney. (R. 312.) At that time, he diagnosed plaintiff with "major depression, severe, recurrent with agitated features," and assessed plaintiff's global assessment of functioning ("GAF") as a 50. (Id. at 313.) Dr. Buongiorno noted plaintiff was a "tearful, anxious woman in moderate distress" whose speech "was a regular, [sic] rate and rhythm." (Id.) "Her mood was depressed and her affect was tearful," but her "stream of thought was logical and coherent." (Id.) Notably, plaintiff incorrectly informed Dr. Buongiorno that "Dr. Webster put her out on disability," and that she had been diagnosed with "Lupus and possibly Rheumatoid arthritis."[1] (Id.) Plaintiff also informed Dr. Buongiorno that she left her job because of intense pain and cognitive difficulties, contradicting other statements made by plaintiff to other doctors. (See R. 200 (noting that plaintiff stopped going to work after an argument with her supervisor that aggravated pain in her left side), 213 (noting that a bad argument with plaintiff's supervisor was "the last straw" and plaintiff quit afterward).)

Plaintiff primarily appears to take exception to the ALJ and magistrate judge's treatment of an apparently erroneous date on one of Dr. Buongiorno's records that led the ALJ to discount Dr. Buongiorno's opinions.[2] The ALJ did consider the incorrect date as one of his reasons for

---

[1]Nothing in plaintiff's medical record mentions even a possible diagnosis of either lupus or rheumatoid arthritis. This is not the only instance of plaintiff incorrectly reporting the findings of a doctor that appears in the record. In a July 2, 2003 treatment record, Dr. S. Susan Torres reported that plaintiff told Dr. Webster that Dr. Torres said that plaintiff had multiple sclerosis and that she should not be working. (R. 240.) Dr. Torres specifically stated "[h]owever, at this point I see no reason for her not to continue working." (Id.) Dr. Torres reported that plaintiff "thinks she has either multiple sclerosis or shingles" and concluded that there was "a very low suspicion for multiple sclerosis" and that she thought it was something to be ruled out." (Id.)

[2]Plaintiff vociferously contests the ALJ and magistrate judge's treatment of this apparently misdated document entitled "Medical Opinion Re: Ability to Do Work-Related Activities (Mental)." (R. 186.) Plaintiff rather pointedly accuses the ALJ and magistrate judge of being "disingenuous" in their treatment of this document. (Pl.'s Objections 2.) The document is dated January 21, 2004, approximately seven months earlier than Dr. Buongiorno apparently conducted an "initial evaluation" of plaintiff. (R. 312 (document titled "initial evaluation" by Dr. Buongiorno).) Both the ALJ and the magistrate judge treated this document as though the date on it were correct – i.e., that Dr. Buongiorno filled out his
(continued...)

4

discounting Dr. Buongiorno's opinion, however, it was not the only reason cited by the ALJ, nor is it the only reason apparent on the record. The ALJ also noted that Dr. Buongiorno's GAF assessment was significantly lower than the GAF assigned plaintiff by Dr. Lecci in an earlier evaluation.[3] (R. 31.) Further, the ALJ noted that the symptoms reported by plaintiff on which Dr. Buongiorno based his diagnosis were belied by plaintiff's activities of daily living, which included almost nightly card games with neighbors, driving, visiting with friends, and going out to shop. (Id.)

The ALJ also noted that Dr. Buongiorno's assessment of plaintiff appeared to be based "on the subjective complaints of the claimant." (Id.) Plaintiff repeatedly argues that "it is also absurd for the ALJ to suggest that a psychiatrist not base his findings on subjective complaints of his patient." (Pl.'s Objections 2; Pl.'s Mem. in Supp. of Mot. 19.) On one level, plaintiff is obviously correct that a psychiatrist must base his or her findings on the subjective reports of a patient. Psychology and psychiatry necessarily rely on such subjective reports because the types of disorders they deal with are not usually susceptible to direct physical observation as in other medical arenas.

---

[2](...continued)
assessment of plaintiff's mental residual functional capacity ("RFC") seven months before he initially examined her. Plaintiff contends that the entire record indicates that this document was merely misdated. Plaintiff may be correct in this assessment, but takes her argument a step too far in her accusation of disingenuousness. This court does not find the analysis of either the ALJ or the magistrate judge to be "disingenuous" or otherwise hypocritical. Further, regardless of the correct date of Dr. Buongiorno's January assessment of plaintiff, as will be discussed, there were ample reasons to discount his findings.

[3]Dr. Lecci assigned plaintiff a GAF of 65 and noted that plaintiff's GAF during the past year had been 75. (R. 149.) The difference between this finding and Dr. Buongiorno's finding is significant. A GAF of 50 indicates a diagnosis of "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 32 (4th ed. 1994) [hereinafter DSM-IV]. A GAF of 65 indicates a diagnosis of "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id. And a GAF of 75 indicates a diagnosis of "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family arguments); no more than slight impairment in social, occupational, or school functioning. (e.g., temporarily falling behind in schoolwork)." Id.

5

However, plaintiff's argument is misplaced in this instance. Though it is legitimate for a psychiatrist to rely on subjective complaints in making his assessment, it is also permissible for an ALJ to consider the length, nature, and extent of the treatment relationship between the psychiatrist and patient, and the supportability of the psychiatrist's opinion given the rest of the medical record. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Dr. Buongiorno worked with plaintiff for four months and made his initial diagnosis in response to self-reporting by plaintiff that contained information that was inaccurate regarding other diagnoses. Dr. Buongiorno's overall assessment ran counter to an earlier evaluation that found plaintiff's primary limitations were physical, not psychological, (R. 150), and an assessment by a state psychological consultant that found plaintiff to be either "not significantly limited" or "moderately limited" in every area of assessment. (R. 182-83.) Further, the particular form Dr. Buongiorno filled out assessing plaintiff's mental RFC contains no explanation whatsoever for his findings. Instead, it recites a cursory explanation that plaintiff "has severe physical and emotional limitations that affect all areas of her life including her activities of daily living." (R. 187.) None of the limitations asserted have any explanation, despite specific instructions on the form to "[e]xplain limitations falling into any of the three most limited categories . . . and include the medical/clinical findings that support this assessment." (R. 186-87.) When a medical document contains no support for its findings and appears based only on subjective complaints that include inaccuracies, the ALJ has reason to discount those findings. See Craig, 76 F.3d at 590 (noting conclusory opinion based on subjective reports of pain that were not supported by doctor's medical notes justified ALJ's rejection of that medical opinion). And, "where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision

6

falls on the [ALJ]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). The ALJ, in the face of evidence contradicting Dr. Buongiorno's opinion, was tasked with determining what weight to give Dr. Buongiorno's opinion. He did so, and his decision is supported by substantial evidence, therefore, plaintiff's objection on this issue is overruled.

The same basic analysis also applies to Dr. Lapp's opinion. The ALJ was confronted by Dr. Lapp's opinion and other medical evidence of record that contradicted that opinion. The ALJ specifically noted that plaintiff's activities of daily living were inconsistent with Dr. Lapp's opinion that plaintiff was "clearly of limited ability and markedly impaired" and would be "unable to perform even sedentary gainful work on a regular, sustained, or predictable basis." (R. 31.) The ALJ also noted the context in which Dr. Lapp's examination occurred, namely as part of plaintiff's ongoing efforts to secure disability payments. (Id.) Plaintiff is correct in pointing out that there is no evidence that plaintiff's counsel paid for the evaluation and that it is not out of the ordinary for an individual to pay for a medical evaluation on their own. However, plaintiff ignores the greater import of the ALJ's statement that a dramatic, favorable medical opinion rendered as part of someone's efforts to have herself declared disabled that runs counter to other medical evidence of record may be entitled to less weight than other medical opinions. Dr. Lapp's opinion unremarkably confirms plaintiff's diagnoses of, *inter alia*, fibromyalgia and depression but, unlike the other physicians treating plaintiff, goes on, based on a single consultative examination, to conclude that plaintiff "is clearly of limited ability and markedly impaired."[4] (R. 216.) This runs counter to

---

[4]The court also notes that both Dr. Lapp and Dr. Buongiorno were expressing opinions on issues reserved to defendant, namely whether plaintiff was disabled as opposed to plaintiff's medical impairments. See 20 C.F.R. §§ 404.1527(e), 416.927(e). As such, the ALJ was not required to give "any special significance to the source of an opinion" as to those issues. Id.

7

previous RFC assessments which found plaintiff to have a medium RFC and the conclusions of her treating physicians at Wilmington Health Associates. (See R. 227 (noting plaintiff cannot work in her current profession "more than anything, with significant strenuous activity needed"), 240 (noting no need for plaintiff to discontinue work one year earlier), 206 (finding no rational explanation for plaintiff's complaints of left arm pain).) Further, Dr. Lapp appears to have only met with plaintiff on one occasion, meaning that the records and opinions of other doctors with longer treatment histories are more probative. See Stewart v. Apfel, 182 F.3d 909 (Table), 1999 U.S. App. LEXIS 15685, *14, 1999 WL 485862, *5 (4th Cir. July 12, 1999) (noting opinions from primary physicians are more probative than opinions of doctors who see claimant only once). This court finds there were sufficient inconsistencies between Dr. Lapp's opinion and the other medical record evidence to permit the ALJ to discount Dr. Lapp's opinion as he saw fit. Consequently, plaintiff's objection here is overruled.

Plaintiff's second objection is that the magistrate judge incorrectly found that the ALJ did not commit reversible error by not explicitly stating the weight he assigned to the opinions of Dr. Lecci and Dr. Liguori. Plaintiff is correct in noting that generally an ALJ is required to explain the weight given to the opinions of medical sources in their opinions. See Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir.1984); Social Security Ruling ("SSR") 96-6p, 1996 SSR LEXIS 3, *5; SSR 96-2p, 1996 SSR LEXIS 9, *11-12. However, plaintiff's insistence that an ALJ's failure to recite a specific set of magic words along the lines of "I have given considerable weight to X opinion" for every opinion is misplaced. Though perhaps an ALJ should include such language in each of his opinions, it is not a talisman that must always be present to avoid a remand. See Stewart, 1999 U.S. App. LEXIS 15685, *14, 1999 WL 485862, *5. Where an ALJ has sufficiently considered all of the

8

evidence in a case to permit a reviewing court to conduct a meaningful review of his decision, failure to explicitly state a weight given to every opinion does not necessarily constitute reversible error. Id. (explaining that in Gordon v. Schweiker the Fourth Circuit "reversed and remanded so that the ALJ could explain the weight given to a variety of medical evidence. However, the medical evidence in that case was in conflict and the ALJ never explained why he chose to end up on one side of the divide rather than the other.") The ALJ here specifically discounted the opinions of Dr. Buongiorno and Dr. Lapp, but did not otherwise specifically state what weight he assigned to the opinions of either Dr. Lecci or Dr. Liguori. However, it is quite evident from the ALJ's opinion that he assigned significant weight to these opinions. As the magistrate judge noted, the ALJ thoroughly discussed the opinions of both doctors, both in reviewing the facts of the case and as support for his findings. (R. 31-36.) The ALJ's failure to assign a specific weight to each of these opinions does not, in this case, rise to the level of reversible error because the ALJ sufficiently discussed all of the evidence necessary for this court to conduct a thorough review of the evidence and his findings. Accordingly, plaintiff's objection on this point is overruled.

Plaintiff's third objection, that the magistrate judge erred by declining to review the ALJ's assessment of plaintiff's credibility, is partially correct. This court may review the ALJ's determination of the credibility of plaintiff's statements to ensure that it comports with established Social Security procedures and is supported by substantial evidence. This court may not, however, perform the sort of re-weighing of the evidence that plaintiff seeks in her original memorandum supporting her motion for judgment on the pleadings. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). Because the magistrate judge declined to undertake this review of the ALJ's assessment of plaintiff's credibility, this court will

9

now do so.

An ALJ must follow a two-step process by which subjective complaints of a claimant are to be evaluated. See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 SSR LEXIS 4, *5-7 (1996); see also Hines v. Barnhart, 453 F.3d 559, 564-65 (4th Cir. 2006). First, an ALJ must make a determination whether there is objective medical evidence of an underlying condition or conditions that could reasonably be expected to produce the claimant's pain or symptoms. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 SSR LEXIS 4, *5-7 (1996). Second, if such objective medical evidence exists, the ALJ must evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine their effect on the claimant's ability to do basic work activities. SSR 96-7p, 1996 SSR LEXIS 4, *5-7. The second step necessarily involves an evaluation of the claimant's credibility regarding her subjective complaints. Id. The SSA has developed a list of factors to be considered in making that credibility determination.[5] Id. at *8.

The primary reason the ALJ found plaintiff's subjective complaints to be not fully credible appears to be that he found those complaints to be inconsistent with plaintiff's reported activities of daily living. Specifically, the ALJ noted that plaintiff testified that she lives alone, walks five to ten minutes before resting, plays cards at a friend's house three to four nights a week, grocery shops, cooks in the microwave, does dishes and laundry, sweeps, mops, drives daily, and performs stretching exercises. (R. 27.) Further, the ALJ noted that plaintiff reads, goes out to eat, visits

---

[5]These factors are: "1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p, 1997 SSR LEXIS 4, *8.

friends, vacuums, cares for her dog, watches television, and babysat a child for two to three weeks in June 2004.[6] (Id.) The ALJ also noted inconsistencies in the record regarding the reasons for which plaintiff quit her former job. (Id. at 28.) Further, the ALJ noted testimony from the plaintiff regarding her carpal tunnel syndrome that was inconsistent with the medical record evidence. (Id.)

Plaintiff takes exceptions to these reasons, asserting that plaintiff's activities of daily living are not inconsistent with the medical evidence.[7] Plaintiff asserts that her activities of daily living are not inconsistent with her subjective complaints and should not form a basis for rejecting her subjective complaints. However, similar activities of daily living have been found sufficient to sustain a finding of not disabled in other cases. See Johnson, 434 F.3d at 658; Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986); but see Hines v. Barnhart, 453 F.3d 559, 566 (4th Cir. 2006) (finding activities of daily living not inconsistent with claims of pain where the ALJ ignored

---

[6] This court notes that this alleged babysitting episode closely coincides with plaintiff's visits to Dr. Buongiorno (August 12, 2004) and Dr. Lapp (July 27, 2004) in which those doctors found plaintiff severely limited in virtually all areas of her life. (R. 213; 313 (finding GAF of 50).)

Plaintiff also asserts that the ALJ erred by finding that plaintiff's testimony was not credible because she testified to babysitting a four-year-old in June 2004, while not noting that she watched videos with her friend's four-year-old in November 2003. This omission may very well have been innocent on plaintiff's part, however, given plaintiff's alleged severity of symptoms, the very fact that she babysat a four-year-old for two to three weeks of time potentially calls her complaints into question. The ALJ took note of this when noting the 2004 babysitting experience as an activity inconsistent with plaintiff's subjective complaints. (R. 28.)

[7] Plaintiff also contends that the ALJ improperly counted a 2003 vacation plaintiff took with her mother against her in his credibility assessment. Plaintiff asserts that taking a vacation is not inconsistent with her limitations. However, plaintiff is not entirely correct on this point. In one sense, as the ALJ recognized, taking a vacation is not necessarily inconsistent with a claim of disability. In this case, however, with a plaintiff who alleges that she tires easily and testified that she needed to get up after 15 to 20 minutes of sitting, a vacation that involved trips walking through airports and extended periods of sitting may be inconsistent with plaintiff's reported symptoms, especially when considered as one of several potential inconsistencies on the record before the ALJ. (R. 189, 371.)

Plaintiff also argues that the ALJ's contention that her credibility was diminished by her statements that she had not had a sex drive in five years, but that she was a homosexual who had been in a relationship for six years. This court agrees with plaintiff that these statements do not necessarily reduce plaintiff's credibility. However, because there are other legitimate bases upon which the ALJ based his opinion, this court does not find the ALJ's error here to be reversible. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in pain evaluation because "he would have reached the same result notwithstanding his initial error").

11

evidence supporting plaintiff's subjective claims). Like plaintiff, the claimant in Johnson suffered from chronic pain, depression, and impairments in her hands. Johnson, 434 F.3d at 653. The ALJ there found the claimant's complaints of pain to be inconsistent with her reported activities of daily living, which included attending church, reading, watching television, cleaning the house, washing clothes, visiting relatives, and performing stretching exercises. Id. at 658. The Fourth Circuit found that the claimant's activities were inconsistent with her reports of excruciating pain and her inability to perform a host of regular movements. The analogy to Johnson is not perfect, but it is instructive. Plaintiff claims that her daily activities are not inconsistent with her complaints and are not consistent with a finding of not disabled because they can be performed on her own schedule. The same can be said, however, about the activities cited by the claimant in Johnson.

The ALJ also cited plaintiff's testimony regarding her carpal tunnel syndrome that was inconsistent with the medical record which revealed a "basically normal" neurological examination. (R. 28.) In reviewing plaintiff's medical records, the ALJ also noted a March 2, 2004 exam conducted by Dr. Kevin S. Scully. (Id. at 25.) At that exam, plaintiff immediately told the doctor she had been rejected twice for total disability and "complain[ed] vociferously of pain in the area of the biceps." (R. 205.) After examination and review of a magnetic resonance imaging ("MRI") scan, Dr. Scully could find "no adequate explanation for the source of her ongoing complaints." (Id.). Dr. Scully reported his findings to Dr. Webster, by concluding "I have no rational explanation for the ongoing and severe pain that she describes as near constant in nature and aggravated by activity, local to her biceps tendon, unrelieved by rest. The patient does have secondary issues of pursuing total disability." (Id. at 206.) In light of medical evidence such as this as well as evidence of plaintiff's daily activities, this court finds the ALJ was justified in reasoning that the combined effect

of the evidence of record was to render plaintiff's subjective complaints not fully credible. Plaintiff's objection regarding the ALJ's assessment of plaintiff's credibility is accordingly overruled.

Next, plaintiff objects to the inclusion of the phrase "low stress" in his hypothetical question to the VE, contending that this phrase is too vague to adequately convey plaintiff's limitations. As a beginning proposition, the ALJ has "some discretion to craft hypothetical questions to communicate to the vocational expert what the claimant can and cannot do." Fisher v. Barnhart, 181 Fed. Appx. 359, 364 (4th Cir. 2006) (unpublished opinion). Hypothetical questions need not include every specific medical condition. Id. Instead, they should "adequately reflect" the plaintiff's RFC as found by the ALJ and supported by sufficient evidence. Id. (citing Johnson v. Barnhart, 434 F.650, 659 (4th Cir. 2005)). If it does so, it is "unimpeachable." Id. The key to a valid hypothetical question posed to a VE is that "it is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." Id.

An ALJ's hypothetical need not reflect all of the opinions of examiners and consulting doctors. Instead, it need only adequately reflect those opinions and medical conditions which the ALJ finds credible. See Johnson v. Barnhart, 434 F.3d at 659 (holding a hypothetical valid because it adequately reflected claimant's characteristics as found by the ALJ); Erhart v. Sec'y of Health & Human Servs., 969 F.2d 534, 540 (7th Cir. 1992) (holding a hypothetical question valid because it reflected claimant's impairments to the extent the ALJ found them supported by evidence in the record); Sobania v. Sec'y of Health & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989) ("the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ") (quoting Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir.1985)).

13

Plaintiff contends that the inclusion of the phrase "low stress" in the ALJ's hypothetical question to the VE renders the question improper because that phrase fails to capture plaintiff's specific individual limitations. This court disagrees. First, in his hypothetical, the ALJ explained his "low stress" limitation to exclude a high stress, high speed assembly type environment. (R. 387.) Second, the VE had reviewed the medical records in plaintiff's case and attended the hearing. As such, he was well aware of plaintiff's limitations that the ALJ was attempting to communicate in his hypothetical. See Bradley v. Barnhart, 175 Fed. Appx. 87, 92 (7th Cir. 2006) (holding an ALJ's failure to define "low stress" in a hypothetical was cured by the VE's review of the record). Finally, several other courts have reviewed hypothetical questions that include limitations to "low stress" work in a variety of settings and found them adequate. See Yarger v. Astrue, 300 Fed. Appx. 461, 463 (9th Cir. 2008); Bordelon v. Astrue, 281 Fed. Appx. 418, 423 (5th Cir. 2008); Smith v. Halter, 307 F.3d 377, 378 (6th Cir. 2001); Nance v. Apfel, 131 F.3d 135 (Table), 1997 U.S. App. LEXIS 34243, *9-10, 1997 WL 755406, *3-4 (4th Cir. 1997); Toney v. Shalala, 35 F.3d 557 (Table), 1994 U.S. App. LEXIS 23646, *5, 1994 WL 463427, *1 (4th Cir. 1994); Kellihan v. Shalala, 30 F.3d 129 (Table), 1994 U.S. App. LEXIS 20710, *7-8, 1994 WL 411615, *1-2 (4th Cir. 1994); Chavis v. Shalala, 28 F.3d 1208 (Table), 1994 U.S. App. LEXIS 16555 *5-8, 1994 WL 319163, *2-3 (4th Cir. 1994); Crowder v. Sullivan, 941 F.2d 1206 (Table), 1991 U.S. App. LEXIS 20590, *2-3, 1991 WL 168584, *1 (4th Cir. 1991).

Plaintiff contends that the VE's testimony in response to the hypothetical is nonetheless flawed. This argument is based on the VE's responses to questions from plaintiff's counsel at hearing. Plaintiff's counsel asked the VE whether any of the jobs he cited as jobs plaintiff could perform would be eliminated if the ALJ's hypothetical adopted the stress limitations to which

14

plaintiff testified. (R. 394-95.) The VE responded that there would be no jobs whatsoever available for plaintiff based on the difficulty in dealing with stress to which she testified. (Id. at 395.) Plaintiff's argument ignores that the ALJ properly found plaintiff's complaints to be not fully credible. As such, the ALJ's hypothetical did not need to reflect the full level of difficulty in dealing with stress to which plaintiff testified. Rather, it only needed to include the level of difficulty in dealing with stress that the ALJ deemed credible. Johnson v. Barnhart, 434 F.3d at 659. Plaintiff's objection on this point is, therefore, overruled.

Plaintiff's final objection consists of two arguments that the VE's testimony was insufficient to carry defendant's burden of proof at step five of the sequential evaluation.[8] First, plaintiff argues that the magistrate judge erred in finding that the ALJ was entitled to rely on the VE's testimony that the jobs he said plaintiff could perform would permit a sit/stand option as required by the ALJ's hypothetical. Second, plaintiff argues that the VE erroneously identified jobs with reasoning levels of two and three for a person with plaintiff's limitations and the magistrate judge uncritically endorsed this testimony.

Plaintiff's first argument begins with the premise that because the DOT does not address the question of whether a particular job permits a sit/stand option, the VE's identification of these jobs was erroneous. Implicit in this argument is that no jobs identified by the DOT will ever be appropriate for an individual who needs a sit/stand at will option. This is not the case. See Fisher, 181 Fed. Appx. at 367 (allowing a hypothetical with a sit/stand option); Johnson, 434 F.3d at 659; Walls v. Barnhart, 296 F.3d 287, 291 (4th Cir. 2002); Hyatt v. Apfel, 153 F.3d 720 (Table), 1998

---

[8]Plaintiff also includes in this objection his earlier objections to the ALJ's assessment of plaintiff's credibility in his RFC finding and to the use of the phrase "low stress" in his hypothetical question to the VE. These objections have already been addressed elsewhere in this order.

15

U.S. App. LEXIS 18193, *7, 1998 WL 480722, *3 (4th Cir. 1998) (finding that a sit/stand option does not mean unskilled workers with this limitation are *per se* disabled, but that a VE's testimony is necessary in such cases). Plaintiff's primary contention here appears to be that the magistrate judge and the ALJ erred by accepting the VE's testimony that the jobs he identified would permit a sit/stand option based on his "personal and professional observation." (R. 388.) This contention is without merit. The Fourth Circuit has held that a "reasonable explanation" for VE's determination regarding the availability of a sit/stand option is the VE's professional knowledge of the jobs he has identified. See Fisher, 181 Fed. Appx. at 366. As such, the VE's testimony regarding the existence of a sit/stand option for the jobs he listed was sufficient.

Plaintiff's second contention is that the magistrate judge uncritically accepted the VE's testimony regarding an alleged conflict between the ALJ's limitation of plaintiff to "simple one, two step tasks" and the jobs identified by the VE, which have DOT reasoning levels of two and three.[9] Plaintiff argues that the VE admitted he was not familiar with the rationale behind the DOT reasoning level categorizations and that such admission is fatal to his testimony because it is inherently unreasonable to rely on any explanation provided by a VE in such a situation.

Review of the VE's testimony, however, does not support plaintiff's broad assertion here. The VE did state that he did not know why particular jobs were assigned particular reasoning levels. (R. 392.) He then went on to explain that all of the jobs in the DOT have "multiple aspects" and that

---

[9]Reasoning level three requires individuals to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." Employment and Training Administration, U. S. Department of Labor, Dictionary of Occupational Titles, App. C, 1991 WL 688702 (Fourth Ed. Rev. 1991). Reasoning level two requires individuals to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Id. Reasoning level one requires individuals to "Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." Id.

the DOT was not developed in an effort to match up one- and two-step task jobs with particular reasoning levels. (Id.) The VE went on to explain that his interpretation of the hypothetical limitation to one- and two-step functions involved "breaking jobs down into their component parts and the actual job is the activity that's done." (Id. at 393.) In that sense, all of the jobs he cited in response to the ALJ's hypothetical were one- and two-step task jobs, even though they are listed in the DOT as reasoning level two and three jobs. The VE's explanation showed that, though he did not know the precise reason that particular jobs were assigned a particular reasoning level, he understood the purpose and background of the DOT. His explanation regarding the perceived conflict between the jobs he cited and plaintiff's limitations as identified by the ALJ further demonstrates that the VE understood how to apply those limitations to the particular jobs he cited, given plaintiff's limitations. Further, despite plaintiff's assertions to the contrary, the VE's explanation appears reasonable. As such, the ALJ was entitled to rely on the VE's testimony because he provided a reasonable explanation for a perceived conflict with the DOT. Consequently, plaintiff's objection on this issue is overruled.

## CONCLUSION

For all of the foregoing reasons, this court OVERRULES plaintiff's numerous objections to the M&R. Except as heretofore stated, the court ADOPTS the findings of the M&R as its own. Accordingly, defendant's motion for judgment on the pleadings is GRANTED, and plaintiff's motion for judgment on the pleadings is DENIED. The clerk of court is directed to close the case.

SO ORDERED, this the 22rd day of March, 2009.

LOUISE W. FLANAGAN
Chief United States District Judge